107 A.2d 896 (1954)
Hyman CASHVAN, Plaintiff,
v.
J. Frank DARLING, Castle Construction Co., a Delaware Corporation, Joseph J. Heintz, Jr. and Pauline Heintz, Howard P. Wilson and Ruth Wilson, Earl R. Stouffer and Lillian N. Stouffer, Fred L. Gerhauser and Laura Gerhauser, James D. Fariss and Katherine J. Fariss, Charles G. May and Carmilla R. May, John W. Lease and Elizabeth H. Lease, Peter Loch and Maria H. Loch, Fullerton Barton Wells and Ruth B. Wells, Defendants.
Court of Chancery of Delaware, New Castle.
June 7, 1954.
Motion for New Trial July 15, 1954.
On Reargument September 23, 1954.
*898 John VanBrunt, Jr., and Charles F. Daley of Killoran & VanBrunt, Wilmington, for plaintiff.
Robert C. Barab, Wilmington, for defendants, Joseph J. Heintz, Jr., Pauline Heintz and Charles G. May.
On Plaintiff's Motion for New Trial July 15, 1954.
SEITZ, Chancellor.
By this declaratory judgment action and the counterclaims of certain individual defendants the court is required to determine whether certain land is subject to restrictions of a type which would prevent plaintiff from using the land for the erection of so-called garden type apartments.
On September 4, 1953, plaintiff Hyman Cashvan entered into a contract with one of the defendants J. Frank Darling whereby plaintiff agreed to purchase from Darling all of the issued and outstanding capital stock of defendant Castle Construction Co. (called "Castle"), of Glen Homes Co. (called "Glen"), as well as certain land held by Darling. The agreement also provided that "The seller shall also at said time [settlement] cause to be extinguished of record any restrictive covenants binding any of the real property of said two corporations and the Seller."
Darling owned all of the stock of Castle and Glen. The assets of the two companies consisted solely of the ownership of certain land which, together with that held by Darling directly, constituted the tract which plaintiff agreed to purchase. Plaintiff intends to use the tract to erect garden type apartments, financed with F.H.A. insured mortgage loans.
Plaintiff expended a substantial amount of money in preliminary work before being formally advised of the possibility that some or all of the land which he was to obtain by virtue of the contract was subject to a possible claim that it was restricted to single family dwelling use  a restriction which admittedly would prevent the erection of garden type apartments. Plaintiff claims all the substantial expenditures were made before such advice was received. It appears that plaintiff expended this money without getting any opinion as to possible restrictions from any Delaware counsel then employed by him and despite the quoted provision as to removal of restrictions.
A default judgment has been entered against all the defendants who have standing to object except those now represented. There can be no doubt that a controversy exists within the meaning of the Declaratory Judgment Act, 10 Del.C. § 6501 et seq.
The land sought to be acquired directly and by the purchase of stock was part of a much larger tract which the defendant Darling commenced to develop as far back as 1936. On December 10, 1940, Castle caused a plot covering a small portion of the larger tract to be recorded. It recites that it is a "Plan showing part of a real estate development known a Swanwyck, formerly known as Castle Heights. It shows a road running roughly east and west known as Landers Lane. It also shows certain lots south of Landers Lane, some of which abut thereon, as well as a row of some 19 lots abutting Landers Lane on the north side, being, inter alia, lots Nos. 1-19 in Block 1 on the Plan. These lots were subject to the so-called Rodgers or Landers Lane restrictions which admittedly do not cover the land in dispute. These restrictions were recorded in December 1937 and applied specifically to lots 1 to 19 in Block 1 on the then recorded plan of Swanwyck.
After World War II, Castle caused plans to be drawn but not recorded which completed the outline of Block 1 by creating lots 20 to 38 in Block 1. These lots were made to face on Ridge Avenue which was the next street north of Landers Lane and roughly parallel thereto. The rears of lots *899 1 to 19 abut the rears of lots 20 to 38 in Block 1.
Castle then undertook to sell all the remaining unsold lots in Block 1, including those which fronted on the south side of Ridge Ave. (later renamed Linstone Road). The land owned by Castle, and which is part of the tract in suit, commences on the north side of Ridge Ave., and runs both north and west for a substantial distance.
At this stage we are basically concerned with the effect of restrictions contained in deeds given by Castle to the purchasers of certain of the lots in Block 1 facing on Ridge Ave.
On August 23, 1945, Castle conveyed lot 34 in Block 1 to Peter Loch and wife. The restrictions limited its use to single family dwellings but specifically provided that the restrictions did not bind any lands of Castle not recorded. Thus these restrictions did not apply to any of the land in dispute.
Defendants rely on some five deeds from Castle to various individuals concerning nine lots in Block 1 facing on Ridge Ave. They are:

 Date Grantee Lots of Block 1
 ---- ------- ---------------
 September 6, 1946 Wells 35, 36, 37, 38
 November 13, 1946 Simmons 33
 May 23, 1947 Grow (now owned 32
 by defendant May)
 May 23, 1947 Fariss 30
 September 18, 1947 Heintz 25, 26

The deeds to all of these lots contain the so-called Wells restrictions. The specific restrictions in these deeds, insofar as they relate to residential use and single family dwellings, are as follows:
"1. The land included in the above described tract shall be used for private residential purposes only except as otherwise provided, and no dwellings shall be erected on any portion thereof other than detached, single family dwellings."
"11. The above covenants, conditions, restrictions, easements and reservations shall not be construed to prevent or prohibit Castle Construction Co. from designating and reserving certain lots to be shown on additional plots of Swanwyck, intended hereafter to be recorded, as and for business purposes, and the foregoing covenants, conditions, restrictions, easements and reservations shall not apply to lot no. 1, Block 1, as said lot is shown on a plat of Swanwyck now recorded in the Office for the Recording of Deeds, in and for New Castle County and State of Delaware, in Deed Record M., Volume 28, Page 601, which said lot is hereby reserved and designated for business purposes, provided, however, the designation of said lot no. 1 of Block 1 and of other lots on any additional recorded plat of Swanwyck for business purposes, shall not prevent the erection of dwelling houses on such designated lots in whole or part at any future time, provided that any lot or lots upon which any such dwelling house is to be erected, shall be subject to and bound by the foregoing covenants, conditions, restrictions, easements and reservations."
Paragraph 13 of these restrictions confers upon any owner of any other lot "in said tract" the right to enforce the restrictions. Reference is made in the introduction to the description of lots 35 to 38 of Block 1 to an unrecorded plan prepared by Darling's engineers dated July 18, 1946. This plan which was readily available in the office of Darling's engineers, shows lots 20 to 38 of Block 1 facing on Ridge Ave. It shows Ridge Ave. dedicated. Of vital importance, it shows lots 1 to 20 inclusive, in what purports to be a portion of Block 9, facing Ridge Ave. from the north. It also shows *900 lots 1 to 4 inclusive in Block 8 which are immediately to the east of lot 1 in Block 9.
As indicated, the five deeds from Castle to the various purchasers of the lots in Block 1 facing on Ridge Ave., provide that the restriction therein limiting the use to detached, single family dwellings refers to "the land included in the above described tract". The parties are in disagreement as to what is meant by the quoted language. Defendants say that the language necessarily refers to a tract of land including but larger than the lot or lots being conveyed by each deed. They go on to argue that the only tract reference in each deed is to the aforementioned plan made by Darling's engineers. They thus conclude that the restriction to detached, single family dwellings must apply to all lots appearing on the engineers' plan dated July 18, 1946. I take it they mean all such lots held by Castle or sold after the first Wells restrictions were imposed September 6, 1946.
Plaintiff argues that the "tract" and "lots" as used in some of the deeds mean only the lots conveyed in instances where the deed conveyed more than one lot. They say the plural usage is mere surplusage where the deed conveyed only one lot. The short answer must be that these arguments ignore the numerous places in such deeds where the language is entirely inconsistent with either of those conclusions and yet consistent in its plural usage. For example, plaintiff's argument disregards such language as "lots included in the above described tract", "owner of any other lot in said tract", "any lot owner" and "aforesaid plan of Swanwyck", as well as other language too numerous to set out. These restrictions were a matter of contract and the clear import of the deeds and the restrictions contained in such deeds is that they were intended to apply to all of the lots on the plan of Swanwyck, dated July 18, 1946 and held or sold by Castle commencing with the recordation of the Wells deed.
Plaintiff next argues that there was no reliance on the engineers' (Damon and Foster) unrecorded plan of July 18, 1946 because no other grantees from Castle received copies thereof with their deeds. Defendants point out and plaintiff has not denied that there is no testimony to this effect. Moreover, where as here the matter is one of express contract, it is difficult for me to see how plaintiff is entitled here to invoke any question of reliance.
Plaintiff next argues that the engineers' plan of July 18, 1946 cannot be the "above described tract" because it does not contain or show thereon course and distances from which a legal description could be prepared. As defendants correctly point out, plaintiff's position is untenable as an examination of the plan will show. The question of a beginning point could be resolved by reference to a previously recorded plot.
It is also of interest to note that these deeds expressly provide that the right to enforce the covenants is granted to "any owner of any other lot in said tract".
I thus conclude that the deeds when construed within their four corners imposed restrictions on the lots appearing on the July 18, 1946 plan which were held or sold by Castle commencing with the Wells deed.
Plaintiff insists that the deeds themselves are ambiguous and that other evidence is admissible to resolve the ambiguity.
Assuming without deciding that this is a proper case to consider some or all of such evidence, I have no doubt that the credible evidence fails to show any basis for construing the word "tract" in the deeds in such a narrow compass as plaintiff suggests. Plaintiff desires a prompt decision and so time does not permit me to analyze the various bits of evidence relied upon by him. It does not alter my conclusion. It suffices to say that if this evidence were to be evaluated as limiting the word "tract" to the land conveyed in each deed, it would not only render much of the language of the deed meaningless but would seriously impugn the integrity of written agreements and deeds generally.
*901 I do not pause to discuss the variations in the restrictions in certain of the Ridge Ave. properties because I take it that once Castle entered into its contractual obligation restricting the lots with the Wells restrictions, it could not thereafter by different restrictions in later deeds prejudice those entitled to enforce the Wells restrictions (changed conditions aside). I emphasize this because we are dealing with express agreements and are not now concerned with any question of implied or neighborhood residential plans. Darling's subsequent attempts by various means to cut down the impact of the Wells restrictions as they applied to the indicated lots contained in the July 18, 1946 plan were without effect as to prior grantees who were entitled to the benefits of the Wells restrictions.
Plaintiff also attempts to make much of the fact that the deeds containing the Wells restrictions were for lots which Darling was selling as a mere convenience to the owners of the abutting lots which faced on Landers Lane and that they were merely to be used to enlarge the backyards for garden purposes, etc. Assuming without deciding that plaintiff's contention is factually accurate, I find nothing which would justify a court in concluding that this evidence, even if admissible, negatived the explicit restrictions contained in the deeds. An obviously serious question involving the parol evidence rule could arise, but I pass it.
Plaintiff argues that because the engineers' plan of July 18, 1946 was not recorded a title searcher would have to go beyond the record to determine the scope of the Wells restrictions. He infers from this that he was not required to notice the matter in the plan. There are several reasons why there is no merit to plaintiff's position. First, plaintiff argues that the court should disregard the fact that plaintiff is buying stock rather than land and treat the matter as though the contract was for the purchase of land owned by Castle. Plaintiff seeks by this argument to place himself in a position of a purchaser without notice. Under the circumstances of this case, I cannot believe that the court should ignore the fact that plaintiff is purchasing stock. To do as plaintiff suggests is to ignore the corporate entity so that the purchaser of all the corporate assets may be relieved of the burdens imposed thereon by the selling corporation. This does not appeal to me as a proper case for piercing the corporate veil when the effect is to circumvent a deed provision made for the benefit of others. In any event, plaintiff's own conduct in connection with the purchase was so negligent that he is not entitled to any unusual consideration. Plaintiff and his associates are men of substantial business experience, yet they did not employ their own Delaware attorney to search the title for them before investing money in preliminary work.
An additional and independent reason why plaintiff can get no aid from the fact that the plan of July 18, 1946 is unrecorded arises from the fact that the deeds from Castle for the several lots explicitly referred to the engineers' plan. Under the law plaintiff was required to take notice of all recorded deeds from Castle conveying portions of this tract. This principle must be considered with the rule that "Notice of a deed is * * * notice of whatever matters one would have learned by any inquiry which the recitals of the instrument made it one's duty to pursue." See 66 C.J.S., Notice, § 13(d); 5 Tiffany, Real Property (3rd ed.) § 1293. An examination of such deeds would have revealed the restrictions binding on the tract shown by "a plan of a portion of Swanwyck made by Damon and Foster, civil engineers. Sharon Hill, Pa., dated July 18, 1946, revised January 27, 1947". Although unrecorded it was readily available.
I therefore conclude that whether plaintiff be considered as the purchaser of stock or the purchaser of the land owned by the corporation whose stock he purchased, in the final analysis and in either event, he does not stand in a position of one without notice of the Wells restrictions and the subject matter of the July 18, 1946, plan of Swanwyck.
*902 Plaintiff also seeks to make some point of the fact that the defendants' holdings constituted a single parcel subject to two conflicting sets of restrictions. Without agreeing with the plaintiff's characterizations of the situation, it seems to me that it is without merit where, as here, we are concerned with express agreements.
Plaintiff sets forth a list of facts from which he concludes that either by estoppel or acquiescence the defendant Heintz may not ask the court to enforce the Wells restrictions. Once again, time does not permit a detailed reference to the evidentiary "rag picking" which would be required to show the substance of plaintiff's various contentions. I have examined them and I fail to find any basis for concluding that the defendant Heintz is subject to either defense. It is also of vital importance to note that plaintiff does not even suggest that either defense is applicable to the defendant May.
I therefore conclude that the so-called Wells restrictions are binding upon the lots on the July 18, 1946 plan of Swanwyck held by or sold by Castle subsequent to the date of the filing of the Wells deed. I further conclude that these defendants are entitled to enforce such restrictions.
Defendants take the position that not only the indicated portion of the limited area shown on the July 18, 1946 plan is restricted to detached, single family dwellings by specific agreement but that all the remaining lots in Swanwyck owned by Castle, as shown on plat of Damon & Foster dated June 27, 1947, and revised August 1, 1947, are expressly restricted by deed dated March 4, 1953. Generally speaking, this plat covers not only the lots embraced by the July 18, 1946 plan but all the rest of the land owned by Castle, which is a large portion of the land involved in the contract.
Since this contention, if accepted, also governs the Castle lots covered by the July 18, 1946 plan, it might seem that logically this point should have been considered first. I have not done so because I feel that in this type of case and in view of my conclusion, the parties would want to have from the trial court a decision on all points of substance.
In support of their argument, defendants rely on a certain deed from Castle to Heintz dated March 4, 1953, containing the Wells restrictions and conveying lot 31 in Block 1. The important fact is that the lot number was designated by reference to the Damon and Foster plat of June 27, 1947, as revised August 1, 1947. Defendants argue that this deed effectively incorporated all of the Castle lots on the plat by reference and became the "tract" referred to in the restrictions.
The same language in the restrictions just discussed which compelled the construction that "tract" meant the unrecorded engineers' plat also requires the conclusion here that the "tract" to which the restrictions applied was the Castle land appearing on the engineers' plat of July 27, 1947, revised August 1, 1947.
It appears that by deed dated September 10, 1953, Heintz conveyed lot 31 to the defaulting defendant Wilson in exchange for a conveyance of lot 22 in Block 1 to Heintz. Consequently none of the appearing defendants now owns or is a successor in interest as to lot 31. But paragraph 13 of the restrictions in the deed expressly provides that "any owner of any other lot in said tract" may bring an action to prevent the violation of such restrictions. In view of this express provision there is no need to find a residential plan. Compare Skinner v. Shepard, 130 Mass. 180; Coughlin v. Barker, 46 Mo.App. 54, 64, 75. The sole question which remains is whether these defendants are entitled to enforce the restrictions under the language of paragraph 13.
Defendants contend that they are what may be called third party donee beneficiaries of the enforcement right granted by paragraph 13 of the deed. Plaintiff argues that any intention to benefit prior grantees will not be inferred in the absence of extrinsic evidence so showing. I cannot agree with plaintiff in cases where the deed language is clear. Conceding that we have *903 always a construction problem when we say how words are to be applied, it seems to me that the language of paragraph 13 is so clear that, in reality, it is plaintiff who would have the court engraft a qualification on the words. There is no reason to say that Castle through Darling did not at the date of that deed intend to commit itself in the manner indicated. After all, Darling's intentions with respect to the use of the tract changed several times over the years. I conclude that defendants are entitled to enforce the restrictions on the third party donee beneficiary theory. See Vol. 5, Restatement of the Law of Property, § 541; Wilmington Housing Authority, for use of Simeone v. Fidelity & Deposit Co., 4 Terry 381, 47 A.2d 524, 170 A.L.R. 1288.
Plaintiff also overlooks the fact that the defendant Heintz purchased lot 22 in Block 1 by exchange subsequent to the date of the deed from Castle conveying lot 31. Thus defendant Heintz was a purchaser, although not from Castle, subsequent to the date of the deed to lot 31 containing the restrictions involved.
No charge of fraud, mistake or inequity is raised in connection with the recorded deed to lot 31 from Castle to Heintz. The charge of estoppel against the defendant Heintz I have resolved in his favor. But, in any event, there is no such charge made against the defendant May.
It follows that all the lots on the June 27, 1947 plat, revised August 1, 1947, which Castle owned on March 4, 1953 are covered by the restrictions contained in the deed to Heintz of that date and defendants are entitled to have them enforced. The limited nature of the actual development of the tract does not warrant the court in circumventing the plain language of the deed. Compare Welshire, Inc. v. Harbison, Del., 91 A.2d 404. It should also be noted that the restrictions only limit the type of residence which may be erected. They do not restrict all residential construction.
Without discussing the fragmentary evidence, I cannot agree with the defendants' further contention that the whole area is restricted by implication under the neighborhood plan theory.
An order will be entered on notice declaring the rights of the parties in accordance with the foregoing conclusions.

On Plaintiff's Motion for New Trial
This is the decision on plaintiff's motion for a new trial under Chancery Court Rule 59(a), Del.C.Ann., limited to the issue of the ascertainment of the intention of the contracting parties in the execution and delivery of the March 4, 1953, deed. This court in its opinion filed June 7, 1954, construed the restriction-enforcement provision of that deed to be for the benefit of the other lot holders in the general area, including the defendants. Plaintiff's motion is grounded on the contention that because the entire deed of March 4, 1953, was not introduced into evidence by the defendants, the court committed error in relying upon the portions of the deed which were pleaded. Plaintiff suggests, in effect, that the appearing defendants were under a duty to offer the entire deed and that plaintiff had no duty to offer evidence of surrounding circumstances in aid of construction unless and until the deed had been offered.
There is no doubt in the court's mind that the effect of the March 4, 1953, deed was an issue in the case and was so understood by plaintiff's counsel. This is shown by the pleadings, the opening statement of defendants' counsel (p. 26), the conference between the court and counsel after trial and before decision, at which time the court requested additional research on one aspect of this very point, and the argument contained in the briefs filed by both counsel.
Thus, the plaintiff's motion has possible merit only if the court improperly passed upon this theory of the case without the deed being in evidence. I pass over the fact that plaintiff's counsel made no point of the absence of the deed until he filed his motion for a new trial. I pass over the further fact that it was plaintiff who was seeking a declaratory judgment that the land was not restricted against the type of structure he *904 sought to erect. Passing by these substantial items, the fact is that all pertinent portions of the deed in question were pleaded by one side or the other and admitted by subsequent pleadings. Thus, the pertinent deed provisions were fully established by the pleadings.
It is permissible to plead pertinent portions of a written instrument. See 19 Am.Jur., Equity, § 235. And where the opposing party admits such allegations there is no need to prove those portions. See 20 Am.Jur., Evidence, § 630. Where, as here, the portions pleaded are sufficient there is no obligation to offer the instrument.
Plaintiff points to certain language in the deed, and says it helps to show intent. But the language mentioned merely makes it clear that the restrictions apply to the particular lot, and falls far short of forming the basis for the granting of a new trial under the circumstances of this case and in the light of the standards which govern the granting of a new trial.
The other evidence which plaintiff would like to introduce is not set forth with particularity in the motion. But I pass over that objection. The fact remains that plaintiff's counsel very frankly admitted at the argument on the motion that it was only cumulative at best and was not after discovered evidence. Such an offer of evidence does not justify the granting of a new trial. Pittsburgh Reduction Co. v. Cowles Electric Smelting & Aluminum Co., 6 Cir., 64 F. 125; Compare Kennedy v. Emerald Coal & Coke, 28 Del.Ch. 405, 42 A.2d 398.
I am persuaded that plaintiff's counsel in the exercise of psychological advocacy, consciously pitched his argument toward an attack upon any finding of a neighborhood plan and "played down" the contract theory relied upon by defendants and subsequently adopted by the court. There is not the slightest basis for concluding that he was misled in any way. Nor was he prevented or discouraged from offering the deed or other evidence. Having lost he will not now be heard to say that he should have a new trial on the scanty showing here made. Compare, Philadelphia Storage Battery Co. v. Radio Corporation of America, 22 Del. Ch. 321, 2 A.2d 80, affirmed 23 Del.Ch. 289, 6 A.2d 329; and see Pittsburgh Reduction Co. v. Cowles Electric Smelting, above.
Plaintiff's motion for a new trial must be denied because I conclude that he has not made a sufficient showing under the controlling law.
Order on notice.

On Reargument
After the filing of the court's opinion, plaintiff was permitted to reargue the limited question as to whether or not the individual defendants who contested this case were entitled to enforce the restrictions contained in the deed of March 4, 1953. The specific question was whether these defendants were included within the provisions of paragraph 13 of that deed which provides that "any owner of any other lot in said tract" may bring an action to prevent the violation of such restrictions.
Plaintiff's sole contention which is pertinent to the question reargued is that the language of paragraph 13 should be construed, in view of the surrounding circumstances, to apply only to persons who may become owners of other lots in the tract through succession, inheritance or assignment from the parties to the agreement after the date of the agreement. Since the objecting defendants do not so qualify, plaintiff says they are not entitled to enforce the restrictions in the March 4, 1953, deed.
Before considering plaintiff's argument on its merits, I pause to note that under plaintiff's own contention the owner of the lot conveyed by the deed of March 4 and his successors would be entitled to enforce the restrictions. This alone would require the court to declare that Castle could not convey the property to plaintiff free of any possible enforceable restrictions which would prevent the erection of garden type apartments. *905 I take it that this is so even though the owner of the lot has not appeared in this action since the court is not required to say that he is without this right where even plaintiff concedes that he has such a right.
We come now to the specific question as to whether the contesting defendants are entitled to the benefits of paragraph 13 of the restrictions which provides that any owner of any other lot of "said tract" may bring an action to prevent violations. Plaintiff says that the court may properly consider the surrounding circumstances and construe the language in the light thereof. The difficulty I have with plaintiff's contention is the same I entertained at the time the original opinion was filed. I refer to the fact that the deed itself contained specific language stating who the beneficiaries of the restrictions were to be, viz., "any owner of any other lot in said tract". There is evidence which, if believed, would cast some doubt on the grantor's intention to make the benefits so broad. But to give such evidence legal effect would, in my opinion, require a reformation of the quoted language of the deed. Surrounding circumstances do aid in construction where the language employed is reasonably capable of more than one construction but to give it effect here would be to reform the instrument under the guise of construction. This the court is not free to do.
I have reviewed the authorities cited by counsel and I believe that 5 Restatement of the Law of Property (Servitudes) § 541 Comment (e) demonstrates the distinction which I have here sought to draw. Thus part of the comment says:
"* * * But in the case of a promise entirely negative in character, as many promises respecting the use of land are, the proof of the necessary intention that the performance was to be for the benefit of a third person is more difficult. In the absence of specific language pointing out the intended beneficiaries of the promise, as is often the case, the proof must rest almost entirely or in large part upon the reasonable inferences from the circumstances under which the promise was made. * * *" (Emphasis supplied.)
The quoted language makes it clear that the surrounding circumstances are important only in the absence of specific language in the instrument involved. Here I feel the instrument sets forth language which is so specific that the court may not in effect vary it by giving effect to extraneous evidence.
For the reasons stated the court adheres to the conclusions set forth in its opinion of June 7, 1954.
Order on notice.