**Joseph J. HEINTZ, Jr. and Pauline Heintz, Plaintiffs,**

**v.**

**VILLAGE REALTY, INC., a Pennsylvania corporation, Gallagher and McManus, Inc., a Pennsylvania corporation and Centralia Mining Company, a Pennsylvania corporation, Defendants.**

**Civ. A. No. 2122.**

United States District Court
D. Delaware.

Sept. 30, 1959.

William E. Taylor, Jr., Wilmington, Del., for plaintiffs.

Clair J. Killoran, E. Dickinson Griffenberg, Jr. (of Killoran & Van Brunt), Arthur J. Sullivan (of Morris, James, Hitchens & Williams), Wilmington, Del., for defendants.

CALEB M. WRIGHT, Chief Judge.

This diversity action is before the court on cross motions for summary judgment. Plaintiffs, Joseph J. Heintz and Pauline Heintz, residents of the State of Delaware, seek the issuance of a permanent injunction against the construction of a shopping center on a tract of land consisting of about seven acres in the development known as Swanwyck. Defendants, Centralia Mining Company, Gallagher and McManus, Inc., and Village Realty, Inc., are corporations incorporated under the laws of the Commonwealth of Pennsylvania, having their principal places of business in Pennsylvania. The amount in controversy, exclusive of interest and costs, exceeds the sum of $10,000.

Plaintiffs, owners of lots 20, 21 and 22, Block 1, in the development of Swanwyck, allege that the defendants, owners,

developers and agents of the seven-acre commercial tract, in using the ground for business purposes are in violation of certain deed limitations. The pertinent part of the deed conveying lot 24, Block 1 from Castle Construction Co. (Castle), successor to the original owner of Swanwyck, to plaintiffs dated June 27, 1950, recorded May 8, 1951, reads as follows:[1]

"All that certain lot or piece of ground situate in New Castle Hundred, New Castle County, Delaware as shown as Lot #24, Block #1, on a plan of a portion of Swanwyck made by Damon & Foster, Civil Engineers, Sharon Hill, Pa., dated July 18, 1946, revised Jan. 27, 1947, * * *.

\* \* \* \* \* \*

"Subject, however, to the Restrictions as imposed on lots facing Landers Lane, in Swanwyck."

Plaintiffs claim that the effect of the "Subject * * * to" clause above quoted was to incorporate within the deed to lot 24 by reference the so-called Landers Lane restrictions [2] which had been placed on lots 1 through 19 as shown on a recorded plan of Swanwyck dated November 16, 1937.[3] The restrictions in relevant part provide:[4]

"Subject, however, to the following covenants, agreements, conditions, easements, reservations, restrictions and charges, which it is hereby agreed shall be covenants running with the land and shall be binding upon the party of the sec-

ond part, her heirs and assigns, and upon all the lands included within the aforesaid metes and bounds, which said covenants, agreements, conditions, easements, reservations, restrictions and charges are hereby imposed for the equal benefit of each lot shown upon said plot:

"1. The land included in the above described tract shall be used for private residential purposes or for apartment houses or multiple family dwellings only, except such land as is set aside on said plot for commercial purposes. Private dwelling houses shall be designed for occupation by a single family and shall be erected at a distance not less than ten feet from the adjoining side property lines and at a distance of not less than fifteen feet from the adjoining rear property lines. Apartment houses or multiple family dwellings shall not occupy more than forty per cent of the land area on which the apartment house or multiple family dwelling is constructed and shall be erected at least twenty-five feet from the adjoining property lines, and the setback from the building or curb line of the street upon which said apartment house or multiple family dwelling is erected to be the same as provided in paragraph 5 of these restrictions. Multiple family dwellings shall not be construed to mean semi-detached or row houses. This restriction shall not prevent Castle Heights Co. from dig-

---

1. Complaint, Ex. E.

2. Plaintiffs' contention with respect to the effect to be accorded the reference to the Landers Lane restrictions in the deed to lot 24 is as follows:
   "Actually, your Honor, turning to the argument in this matter, there are really only two questions before the court which may be variously stated, but I think the simplest statement of the two is that the first question is the legal effect of placing the so-called Rogers or Landers Lane restrictions on lot No. 24, Block 1, of Swanwyck. * * * [A]nd when I say Rogers restrictions I don't mean

Rogers restrictions for any other purpose than identification—in other words, what I am talking about is the literal verbiage of those restrictions through incorporation by reference must for the purpose of this case be read as if they were physically typed into that Heintz deed of June 27, 1950." Argument of counsel for plaintiffs, oral argument September 2, 1959. (Emphasis supplied.)

3. Affidavit of Bernard Hessler, Jr., dated September 1, 1959.

4. Complaint, Ex. D.

ging its well, or wells, on said tract of land for supplying water.

\* \* \* \* \* \*

"10. Castle Heights Co. reserves unto itself, its successors and assigns, the right to sell for commercial or business purposes Lot No. 1 on said plot, being part of Block No. 1 of said Castle Heights development as said Castle Heights Co. intends to lay out same, and said Castle Heights Co. covenants that it intends to make like reservations as to Lot No. 38, Block No. 1; Lot No. 1, Block 8; Lot No. 1, Block No. 22; Lot No. 1, Block No. 25; Lots Nos. 4 and 5, Block No. 21; Lots Nos. 1, 2, 3, 4, 5, and 6, Block No. 19; and Lots Nos. 1, 2, 3, 4, 5, and 6, Block No. 3 as will be more particularly shown by further plots of portions of said Castle Heights development hereinafter intended to be recorded. The commercial purposes herein referred to are limited to stores, showrooms, or public garages. No manufacturing or dry cleaning establishments, or other noxious or offensive trade or trades, where the actual work is done, shall be carried on or maintained, nor shall anything be done in any part of Castle Heights which may be or become an annoyance or nuisance to the neighborhood. The commercial area shall be limited solely to the sale and display of articles of merchandise.

\* \* \* \* \* \*

"14. The provisions herein contained shall run with the land and shall enure and bind the land to the benefit of and be enforceable by the said Castle Heights Co., its successors and assigns or the owner or owners of any lot or lots included in said tract or their respective legal representatives, heirs or assigns, and the failure by the said Castle Heights Co. or any land owner to en-

force any covenant, agreement, condition, easement, reservation, restriction or charge herein contained shall in no event be deemed a waiver of the right to do so thereafter, as to the said breach or as to one occurring prior or subsequent thereto."

Plaintiffs do not presently hold title to lot 24; hence, no claim is asserted as direct grantee. Standing to enforce the above provisions is purportedly derived from the third party donee beneficiary doctrine as enunciated by Chancellor Seitz in Cashvan v. Darling.[5] Plaintiffs' argument is as follows:[6]

"It is clear from the terms of this deed that these restrictions ' \* \* \* are hereby imposed for the equal benefit of each lot shown upon said plot.' \* \* \* The only plot to which reference can be made is the plan of 'a portion of Swanwyck made by Damon and Foster, Civil Engineers, Sharon Hill, Pa., dated July 18, 1946, revised January 27, 1947', because it is the only plot mentioned within the four corners of this deed. \* \* \*

"Restrictions 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13 and 14 all contain language indicating that the restrictions are applicable to ' \* \* \* the lots included in the above described tract.' It was clearly the intention of the parties to this deed in placing the restrictions expressly on lot No. 24, Block 1 of Swanwyck to make them applicable to all of the lots shown on the plan of a portion of Swanwyck dated July 18, 1946, revised January 27, 1947. \* \* \* This intention is particularly clear from restriction 14 which expressly provides that:

" 'The provisions herein contained shall run with the land and shall enure and bind the land to the benefit of and be enforceable by the said Castle Heights Co., its successors

---

5. Del.Ch.1954, 107 A.2d 896.

6. Plaintiffs' Requests for Findings and Conclusions and Memorandum in Support

Thereof, dated September 2, 1959, pp. 13–14.

and assigns, or the owner or owners of any lot or lots included in said tract or their respective legal representatives, heirs or assigns, * *.'

"In Cashvan v. Darling, Del.Ch. 1954, 107 A.2d 896, Chancellor Seitz, construing the applicability of restrictions phrased in the plural, referring to a plot plan containing numerous lots and conveying only a single lot, held that such deeds, when construed within their four corners, imposed restrictions on the lots appearing on the plan referred to in the deed which were held by the grantor when the restrictions were imposed. Cashvan, supra [at], p[ages] 900, para. 6; 903, para. 3.

"When Castle conveyed lot No. 24, Block 1 to Heintz, it still owned lot No. 22, Block 1 on the plan of Swanwyck dated July 16, 1948 and revised January 27, 1947. * * * Thus, when Heintz received his deed to lot No. 24, Block 1, including the Landers Lane or Rogers restrictions, these same restrictions were also placed upon lot No. 22, Block 1, shown on this plot. * * * When Heintz got the deed conveying lot No. 24, Block 1, Swanwyck the right to enforce these restrictions was expressly conferred upon all lots shown on the plan of Swanwyck referred to in the Heintz deed by the express provisions of restriction 14. * * *

"As Chancellor Seitz held in Cashvan, supra, 902, para. 9, 903, para. 3, each of these lot owners was a third party donee beneficiary of the right to enforce these restrictions."

Under the appropriate reasoning of Chancellor Seitz it would seem that plaintiffs, pursuant to their theory, would have two independent bases for standing. First, since Castle sold lot No. 22 subsequent to the imposition of the Landers Lane restriction upon lot No. 24 all successors in interest to lot No. 22 would have the power to enforce.[7] Second, the deed itself specifically states that, "The provisions herein contained shall run with the land and shall enure and bind the land to the benefit of and be enforceable by the said Castle Heights Co., its successors and assigns, or the owner or owners of any lot or lots included in said tract or their respective legal representatives, heirs or assigns, * * *."[8]

7. "I therefore conclude that the so-called Wells restrictions are binding upon the lots on the July 18, 1946 plan of Swanwyck held by or sold by Castle subsequent to the date of the filing of the Wells deed. I further conclude that these defendants are entitled to enforce such restrictions." Cashvan v. Darling, Del.Ch.1954, 107 A.2d 896, 902.

8. Note 3, supra.
"It appears that by deed dated September 10, 1953, Heintz conveyed lot 31 to the defaulting defendant Wilson in exchange for a conveyance of lot 22 in Block 1 to Heintz. Consequently none of the appearing defendants now owns or is a successor in interest as to lot 31. But paragraph 13 of the restrictions in the deed expressly provides that 'any owner of any other lot in said tract' may bring an action to prevent the violation of such restrictions. In view of this express provision there is no need to find a residential plan. Compare Skinner v. Shepard, 130 Mass. 180; Coughlin v. Barker, 46 Mo.App. 54, 64, 75. The sole question which remains is whether these defendants are entitled to enforce the restrictions under the language of paragraph 13.

"Defendants contend that they are what may be called third party donee beneficiaries of the enforcement right granted by paragraph 13 of the deed. Plaintiff argues that any intention to benefit prior grantees will not be inferred in the absence of extrinsic evidence so showing. I cannot agree with plaintiff in cases where the deed language is clear. Conceding that we have always a construction problem when we say how words are to be applied, it seems to me that the language of paragraph 13 is so clear that, in reality, it is plaintiff who would have the court engraft a qualification on the words. There is no reason to say that Castle through Darling did not at the date of that deed intend to commit itself in the manner indicated. After all, Darling's intentions with respect to the use of the tract changed several times over the years. I conclude that defendants are entitled to enforce the re-

Plaintiffs next urge that the lots which Castle covenanted it intended to reserve for business purposes in restriction 10 [9] are set forth on an unrecorded plan designated "Tentative Plan of Swanwyck" dated March 8, 1938,[10] and under the rule of construction *expressio unius est exclusio alterius* the express designation excludes any reservation in Castle to designate other lots shown on this same plan for business purposes; since the lots which defendants are engaged in developing are not included in the purported specific reservation their activity should be enjoined.

Affording plaintiffs the benefit of all favorable inferences that might properly be drawn from the undisputed facts, the court cannot accept their position.

Restriction 10 has no meaning independent of restriction one which specifically limits the manner in which the land, included in the described tract, shall be developed.[11] Under plaintiffs' theory the "above described tract" refers to a plan of a portion of Swanwyck prepared by Damon and Foster, Civil Engineers, Sharon Hill, Pa., dated July 18, 1946, revised January 27, 1947.[12] The partial plot plan encompasses Block 1, lots 20–38; Block 9, lots 1–20 and Block 8, lots 1–4.[13] These blocks and lot numbers are therefore necessarily the only ones that are encumbered by the restriction. Defendants' commercial project is not shown on this plan. Restriction 10 is an exception to the use proscriptions imposed by restriction 1. Restriction 10 standing alone has no independent significance for it is restriction 1 which imposes the blanket restraint on use. Restriction 10 merely excepts the block numbers and lots exhibited on the July 18, 1946 plat from the limitations imposed by restriction one. Block No. 22, lot No. 1; Block No. 25, lot No. 1; Block No. 21, lots Nos. 4 and 5; Block No. 19, lots Nos. 1, 2, 3, 4, 5, and 6, and Block No. 3, lots Nos. 1, 2, 3, 4, 5, and 6 referred to in restriction 10 are not included in the July 18, 1946 plan. Plaintiffs recognizing this, state that the lots set forth in restriction 10 are indicated on an unrecorded document designated, "Tentative Plan of Swanwyck dated March 8, 1938."[14] This plan covers the entire development of Swanwyck showing 35 block numbers.

The fact that the 1938 tentative plan encompasses the area noted in restriction 10 does not mean that these are the only lands that may be used for business purposes. To so hold, would require an extension of the limitations encompassed in restriction 1. It would necessitate the decreeing of a negative restriction on all the lands not embodied in the July 18, 1946 plan. The problems which such a construction would engender demonstrate strongly against plaintiffs' proffered interpretation. The principle of *expressio unius est exclusio alterius* has no office under the present circumstances where its application would require the court to imply a negative restriction on vast acreages of developed and undeveloped lands.[15]

That the intent of the parties was other than that asserted by plaintiffs is amply supported by the record. Plaintiffs have attached to their moving papers a recorded document entitled "Final Plat Block of Swanwyck dated June 27,

---

strictions on the third party donee beneficiary theory. * * * " Cashvan v. Darling, Del.Ch.1954, 107 A.2d 896, 902–903.

9. Note 4, supra.

10. Complaint, Ex. F.

11. Note 4, supra.

12. Complaint, Ex. G.

13. Note 12, supra.

14. Complaint, Ex. F.

15. Plaintiffs do not contend that the area in dispute is restricted by implication under the neighborhood plan theory.
    "Without discussing the fragmentary evidence, I cannot agree with the defendants' further contention that the whole area is restricted by implication under the neighborhood plan theory." 107 A.2d 896, 903.

1947, revised August 1, 1947." [16] On this plat plan, encompassing 27 blocks of Swanwyck, the lands under consideration are specifically designated for commercial purposes.[17]

There are other cogent reasons for denying plaintiffs relief. Lot No. 22 not only had imposed upon it the Landers Lane restrictions but by applying plaintiffs' standards they would be third-party donee beneficiaries of the Wells restrictions dated September 6, 1946.[18] These were the specific restrictions before the court in Cashvan v. Darling.[19] The Chancellor concluded that the Wells restrictions were binding upon the lots on the July 18, 1946 Partial Plan of Swanwyck [20] held by or sold by Castle subsequent to the date of the filing of the Wells deed.[21] The relevant Wells restrictions construed in Cashvan v. Darling are set forth below:[22]

"'1. The land included in the above described tract shall be used for private residential purposes only except as otherwise provided, and no dwellings shall be erected on any portion thereof other than detached, single family dwellings.'

"'11. The above covenants, conditions, restrictions, easements and reservations shall not be construed to prevent or prohibit Castle Construction Co. from designating and reserving certain lots to be shown on additional plots of Swanwyck, intended hereafter to be recorded, as and for business purposes, and the foregoing covenants, conditions, restrictions, easements and reservations shall not apply to lot no. 1, Block 1, as said lot is shown on a plat of Swanwyck now recorded in the Office for the Recording of Deeds, in and for New Castle County and State of Delaware, in Deed Record M., Volume 28, Page 601, which said lot is hereby reserved and designated for business purposes, provided, however, the designation of said lot no. 1 of Block 1 and of other lots on any additional recorded plat of Swanwyck for business purposes, shall not prevent the erection of dwelling houses on such designated lots in whole or part at any future time, provided that any lot or lots upon which any such dwelling house is to be erected, shall be subject to and bound by the foregoing covenants, conditions, restrictions, easements and reservations.'"

Permeating these restrictions is the general scheme enunciating a blanket limitation attended by certain exceptions and reservations. The identical provisions contained in a deed between Heintz and Castle dated March 4, 1953 [23] were recently construed by Chancellor Seitz in Heintz v. Village Realty, to permit broad designations of Swanwyck lands for business purposes.[24] The principals before the Chancellor in Heintz v. Village Realty with but one exception are the same parties engaged in the immediate

16. Complaint, Ex. A; this plan is annexed to an agreement dated August 18, 1948 between Castle Construction Co. and the Artesian Water Company, said agreement being recorded in the Office of the Recorder of Deeds, in and for New Castle County, at Wilmington, Delaware, in Deed Rec. Z, Volume 47, Page 386 (Hessler Affidavit dated August 5, 1959). It is noted that the deed from Castle Construction Co. to Artesian Water Company conveyed lots 20 and 21, Block 1, the title to which was thereafter reposed in plaintiffs by deed from Artesian Water Company to plaintiffs dated October 31, 1952, and recorded in the Office aforesaid in Deed Rec. V, Volume 52, page 387. It is through the ownership of lots 20 and 21, Block 1, in conjunction with lot 22, Block 1, that plaintiffs assert the present claims.

17. Complaint, Ex. A.

18. Note 6, supra.

19. 1954, 107 A.2d 896.

20. Complaint, Ex. G.

21. Note 7, supra.

22. 1954, 107 A.2d 896, 899.

23. Complaint, Ex. C.

24. Complaint, Ex. H; Memorandum Opinion, Ct. of Chancery, August 5, 1959, Civil Action 1172.

litigation. There, present plaintiffs sought the precise relief requested in this action, namely, to enjoin the construction of commercial properties on the disputed land. The only distinction between the pending suit and the cause in Chancery is that plaintiffs now assert a different basis for recovery. Since the determination of the Chancellor is unreported the following significant passages from the decision are quoted: [25]

"Plaintiffs rely upon restrictive covenants #1 and #11 in their deed which restrictions are also admittedly binding on the defendants. These restrictions provide:

" '1. The land included in the above described tract shall be used for private residential purposes only except as otherwise provided, and no dwellings shall be erected on any portion thereof other than detached, single family dwellings.'

" '11. The above covenants, conditions, restrictions, easements and reservations shall not be construed to prevent or prohibit Castle Construction Co. from designating and reserving certain lots to be shown on additional plots of Swanwyck, intended hereafter to be recorded, as and for business purposes, and the foregoing covenants, conditions, restrictions, easements and reservations shall not apply to lot no. 1, Block 1, as said lot is shown on a plat of Swanwyck now recorded in the Office for the Recording of Deeds, in and for New Castle County and State of Delaware in Deed Record M, Volume 28, Page 601, * * *.' "

"It appears that the land here involved was once owned by Castle Construction Company. During such time Castle Construction Company designated it for business purposes. Defendants argue that the designation for business purposes was permitted by the very language of the restrictions upon which plaintiffs rely. Thus, they say there can be no violation of the restrictions by the action the defendants are now taking.

"As I understand it plaintiffs argue that the general language of restrictive covenant #1 can be emasculated if the defendants' construction of Paragraph #11 is accepted. Plaintiffs seem to suggest that while Castle might have designated particular lots for business purposes it was not contemplated that it should designate a seven acre area for that purpose.

"The court is unable to see how it can accept plaintiffs' argument since Paragraph 11 specifically says that Castle may designate additional lots. The use of the plural can hardly mean that the court can put a limit on the number of such lots which may be so designated. * * * "

The aforementioned Wells restrictions vary materially from the disputed portion of the Landers Lane restrictions. The Wells restrictions, because of earlier recordation date, would seem to take precedence over the latter recorded lot 24 Landers Lane restrictions.[26] Even assuming that the portions of the Landers Lane and Wells restrictions as are herein pertinent may be interpreted without

25. Note 24, supra.

26. "I do not pause to discuss the variations in the restrictions in certain of the Ridge Ave. properties because I take it that once Castle entered into its contractual obligation restricting the lots with the Wells restrictions, it could not thereafter by different restrictions in later deeds prejudice those entitled to enforce the Wells restrictions * * *. I emphasize this because we are dealing with express agreements and are not now concerned with any question of implied or neighborhood residential plans. Darling's subsequent attempts by various means to cut down the impact of the Wells restriction [sic] as they applied to the indicated lots contained in the July 18, 1946 plan were without effect as to prior grantees who were entitled to the benefits of the Wells restrictions." 1954, 107 A.2d 896, 901.

conflict, it would seem that the only rational construction would be that the designation of certain lots for business purposes in the Landers Lane restriction 10 [27] was only evidentiary of an intent to partially exercise the broad reservation contained in the earlier Wells restriction No. 11.[28]

Accordingly, for the views heretofore expressed, plaintiffs' motion for summary judgment will be denied and defendants' motion granted.

The foregoing opinion is adopted as the court's findings of fact and conclusions of law pursuant to F.R.Civ.P. 52 (a), 28 U.S.C.A.

Let an appropriate order in conformity herewith be submitted.