# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STEPHEN M. HAUGE and JESSICA HAGUE; DONALD MAY and KARA MAY; JOHN BARNETT and NANCY BARNETT; and JORDON ROLLINS and JULIE ROLLINS, | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 2020-0361-PWG |
| | ) | |
| BAY LANDING POA, INC., a Delaware corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MASTER'S REPORT

Date Submitted: March 25, 2022
Final Report: July 7, 2022

Dean A. Campbell, Esq., LAW OFFICE OF DEAN A. CAMPBELL, P.A., Milton, Delaware, *Attorney for Plaintiffs*

Aaron E. Moore, Esq., Jessica L. Tyler, Esq., MARSHALL DENNEHY WARNER COLEMAN & GOGGIN, Wilmington, Delaware, *Attorneys for Defendant*

**GRIFFIN, M.**

Pending before me is an action by four homeowners within a community against the homeowners association, claiming, in part, that their properties are not subject to the community's deed restrictions because those restrictions were not properly recorded, and the homeowners did not have notice of them, when they purchased their properties. The homeowners seek partial summary judgment on those claims. The association moves for summary judgment in their favor on all matters, including the homeowners' claims that actions by the association's board of directors were void and a receiver should be appointed for the association. I recommend that the Court grant summary judgment in the association's favor with regard to the enforceability of the deed restrictions against the properties of three of the four homeowners, finding those homeowners had constructive notice of the deed restrictions at the time they purchased their properties. With regard to the enforceability of the deed restrictions against the fourth homeowner, I recommend that summary judgment be denied because material issues of fact remain in dispute whether that homeowner had actual or constructive notice of the restrictions at the time they purchased their property. Further, I recommend that the Court deny summary judgment on the other claims since I find it desirable to inquire more thoroughly into the facts to clarify the application of the law to the circumstances. This is a final report.

## I. Background

Bay Landing ("Community") is located outside of Milton, Sussex County, Delaware.[1] The Community was developed by non-party Reynolds Road LLC ("Developer").[2] On April 29, 2010, the Developer recorded the "Bay Landing Subdivision 41 Single Family Lot Subdivision Final Subdivision Plans" ("Plan") that laid out the Bay Landing community.[3] The Plan states, "All proposed road shown [sic] are private streets and to be maintained by the developer until such time as a homeowners association can provide for said maintenance."[4] On March 20, 2012, the Plan was revised and re-recorded.[5] The Plan includes the lots at issue in this case as part of the Community.[6]

On February 8, 2013, the Developer conveyed Lot 30 within the Community by deed ("Hague Deed") to Plaintiffs Stephen Hague and Jessica Hague

---

[1] Docket Item ("D.I.") 9, ¶ 1.

[2] *See*, *e.g.*, D.I. 13, Ex. C.

[3] The Plan is found at the Sussex County Recorder of Deeds ("ROD"), Plot Book 145, Page 19. The Court may take judicial notice of records in the Recorder of Deeds. *See generally, Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC,* 2010 WL 363845, at *10 n. 58 (Del. Ch. Jan. 27, 2010) (taking judicial notice that a loan and mortgage had been satisfied through a Mortgage Satisfaction Piece filed with the Recorder of Deeds of Sussex County, Delaware), *aff'd,* 7 A.3d 485 (Del. 2010) (TABLE).

[4] D.I. 13, Ex. C. Several other recitations in the Plan anticipate the establishment of a homeowners association. *Id*.

[5] *See* ROD, Plot Book 169, Page 71. The references to a homeowners association in the Plan remained the same. *Id.*

[6] *See* ROD, Plot Book 145, Page 19; ROD, Plot Book 169, Page 71.

2

(collectively, "Hagues").[7]  On October 30, 2013, the Developer executed and recorded a Declaration of Covenants, Conditions, and Restrictions ("Declaration") for the Community, which established Defendant Bay Landing Property Owners Association, Inc. ("POA") as the homeowners association for the Community.[8]  The Declaration states, in pertinent part:

> [T]he Developer is the fee simple owner of certain real property located in Broadkill Hundred, Sussex County, Delaware as set forth in Exhibit "A" attached hereto and made a part hereof and further shown on a Final Site Plan for Bay Landing recorded in the Office of the Recorder of Deeds in and for Sussex County at Plot Book 145, Page 19 [the Plan], (hereinafter referred to as the 'Property') and desires to develop therein a residential community.… the Developer desires to … subject the Property to the covenants, restrictions … as hereinafter set forth.
>
> …the Developer hereby declares that the following restrictions shall run with, burden and bind the Property and the developer hereby declares the Property, as described in Exhibit "A," is and shall be held, transferred, sold, conveyed, occupied and used subject to the restrictions hereinafter set forth …[9]

The Declaration recorded in 2013 omitted "Exhibit A."

The Developer conveyed Lot 31 in the Community by deed ("May Deed") to Plaintiffs Donald May and Kara Hafler (collectively, "Mays") on January 15, 2014.[10] The Developer conveyed Lot 36 by deed ("Rollins Deed") to Plaintiffs Jordon

---

[7] D.I. 1, Ex A.

[8] D.I. 31, Ex. A.

[9] *Id*.

[10] D.I. 1, Ex. B.

Rollins and Julie Rollins (collectively, "Rollins") on May 5, 2014.[11] The Developer conveyed Lot 28 by deed ("Barnetts Deed") to Plaintiffs John Barnett and Nancy Barnett (collectively, "Barnetts") on July 10, 2014.[12] Plaintiffs acknowledge that, based on the Plan's references to their lots, they knew, at the time they purchased their properties, that "a homeowners' association was to be created at some future date and they would be members" of that homeowners' association.[13]

On September 24, 2015, the Developer re-recorded the Declaration to add the omitted Exhibit A.[14] The re-recorded Declaration notes: "[t]his Declaration is being re-recorded to attach the Exhibit 'A'."[15] Exhibit A includes "[a]ll those certain Lots (including specifically Lots #1 through 41) .... as being the "Bay Landing

---

[11] D.I. 11, Ex. D.

[12] D.I. 1, Ex. D. I refer to the Barnetts collectively with the Hagues, Mays, and Rollins as "Plaintiffs."

[13] D.I. 1, ¶ 20. *See also id.*, ¶ 22 ("Because [Plan] places Plaintiffs on notice that a homeowners association was to be created, Plaintiffs have acknowledged their membership in the POA but refuse to subject their respective lots to deed restrictions of which they had no knowledge prior to purchasing their lots."); D.I. 11, at 2 ("Th[e Plaintiffs] recognize that they use the common elements, i.e. the roads, and have agreed to contribute their fair share to the maintenance."); *id.*, at 5 ("(1) Th[e Plaintiffs] knew they were buying real property in a subdivision. Besides stating the obvious, the subdivision plot plan, to which each deed references, identifies there is to be a homeowners' association but gives no further details ... (2) The Plaintiffs do not object to paying reasonable assessments to off-set the maintenance of the common elements, i.e. the roads.").

[14] D.I. 31, Ex. B.

[15] *Id.*

Subdivision" as depicted on the [Plan] ... recorded in the Office of the Recorder of Deeds in and for Sussex County at Plot Book 145, Page 19, et seq."[16]

In mid-2017, the Community's residents formed a transition team, which contacted the Developer about beginning the transition to establish a homeowner-elected board of directors.[17] The Developer responded that it did not wish to participate in such a process.[18] In February of 2018, the transition team shared information with all Community homeowners concerning the different versions of the Declaration received by homeowners.[19] The Developers' principals resigned as directors of the POA on January 31, 2019,[20] and homeowners became members of the POA's Board of Directors ("Board") shortly thereafter.[21]

On May 12, 2020, Plaintiffs filed the Complaint Concerning Deed Restrictions Pursuant to 10 *Del. C.* § 348 ("Complaint"), asserting that the Declaration recorded in 2013 was invalid or revoked and that Plaintiffs' properties are not subject to the deed restrictions contained in it.[22] They seek injunctive and declaratory relief to prevent the enforcement of the Declaration's deed restrictions

---

[16] *Id.*

[17] D.I. 47, Ex. A, ¶ 7.

[18] *Id.*

[19] *Id.*, Ex. A, ¶ 8; D.I. 41, Ex. D.

[20] D.I. 47, Ex. A, ¶ 4.

[21] *Id.*, Ex. A, ¶ 5.

[22] D.I. 1.

against them.[23]  Alternatively, the Complaint requests that, because the Board has been acting through three members and the bylaws require four members, the Court declare all of the Board's acts invalid and enjoin the Board to fill a vacancy on the Board and appoint a custodian, receiver pendente lite, or special master to manage the POA until the Board is properly constituted.[24]  Plaintiffs also seek attorneys' fees.[25]

The parties engaged in mandatory mediation under 10 *Del. C.* § 348(c), which was unsuccessful.[26]  The POA filed its answer on August 7, 2020.[27]  Plaintiffs filed their Motion for Partial Judgment on the Pleadings on March 10, 2021.[28]  That motion was fully briefed.[29]  In briefing that motion, the POA relied upon documents outside the scope of the pleadings.[30]  At a September 7, 2021 status conference, I converted that motion into a Motion for Partial Summary Judgment, held it in abeyance pending discovery in the interest of judicial economy, and allowed the

---

[23] *Id.*, ¶¶ 24-30.

[24] *Id.*, ¶¶ 31-41; *id.*, at 9.

[25] *Id.*, ¶¶ 42-43.

[26] D.I. 4; D.I. 5; D.I. 10.

[27] D.I. 9.

[28] D.I. 11.

[29] *Id.*; D.I. 13; D.I. 18.

[30] *See* D.I. 13.

6

POA to file a dispositive motion.[31]  On December 3, 2021, the POA filed its Motion

for Summary Judgment.[32]  On December 6, 2021, Plaintiffs renewed their Motion

for Partial Summary Judgment.[33]  Those motions are fully briefed.[34]

## II.    Standard of Review

Under Court of Chancery Rule 56, the Court may grant a motion for summary

judgment when "the moving party demonstrates the absence of issues of material

fact and that it is entitled to a judgment as a matter of law."[35]  The moving party

bears the burden of demonstrating that no material issues of fact are in dispute and

that it is entitled to judgment as a matter of law.[36]  Evidence must be viewed "in the

light most favorable to the non-moving party."[37]  Summary judgment may not be

granted when material issues of fact exist or if the Court determines that it "seems

---

[31] D.I. 21.

[32] D.I. 22.

[33] D.I. 24.

[34] D.I. 25; D.I. 27; D.I. 29; D.I. 40; D.I. 41; D.I. 46; D.I. 47.

[35] *Wagamon v. Dolan*, 2012 WL 1388847, at *2 (Del. Ch. Apr. 20, 2012); *see also Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, 1996 WL 506906, at *2 (Del. Ch. Sept. 3, 1996), *aff'd* 692 A.2d 411 (Del. 1997) (TABLE).

[36] *Wagamon*, 2012 WL 1388847, at *2; *Ludeen v. Pricewaterhousecoopers, LLC*, 2006 WL 2559855, at *5 (Del. Super. Aug. 31, 2006).

[37] *Williams v. Geier*, 671 A.2d 1368, 1375-76 (Del. 1996) (citing *Bershad v. Curtiss-Wright Corp.*, 535 A.2d 8401, 844 (Del. 1987)).

desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances."[38]

When the Court is presented with cross-motions for summary judgment, the Court may "deem the motions to be the equivalent of a stipulation for decision,"[39] but "[t]he existence of cross-motions … does [not] change the standard for summary judgment."[40]  In evaluating cross-motions for summary judgment, the court examines each motion independently and only grants a motion for summary judgment to one of the parties when there is no disputed issue of material fact and that party is entitled to judgment as a matter of law.[41]

### III.    Analysis

*A.  Parties' Contentions*

Plaintiffs seek partial summary judgment for a declaratory judgment that the Declaration is not enforceable against their properties, and to enjoin the POA from asserting its rights over their properties, trespassing or imposing liens on their

---

[38] *In re Est. of Turner*, 2004 WL 74473, at *4 (Del. Ch. Jan. 9, 2004) (quoting *Holladay v. Patten*, 1995 WL 54437, at *3 (Del. Ch. Jan. 4, 1993)) (internal quotation marks omittd); *see also Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).

[39] Ct. Ch. R. 56(h).

[40] *Bernstein v. Tact Manager, Inc.*, 953 A.2d 1003, 1007 (Del. Ch. 2007).

[41] *See Empire of Am. Relocation Servs., Inc. v. Commercial Credit Co.*, 551 A.2d 433, 435 (Del. 1988); *Wimbledon Fund LP v. SV Special Situations LP*, 2011 WL 378827, at *7 (Del. Ch. Feb. 4, 2011).

properties.[42]  They contend the Declaration was not properly recorded in 2013, and they did not have actual or constructive notice of the Declaration at the time they purchased their properties.[43]  The POA seeks summary judgment in its favor on all matters, arguing that Plaintiffs are bound by the Declaration because the Hagues had actual notice of the Declaration and the other Plaintiffs had, at least, constructive notice.[44]  It further argues that Plaintiffs have not met their burden for obtaining injunctive relief and Plaintiffs' corporate law claims are dismissible as derivative claims.[45]  Finally, it alleges that neither the appointment of a receiver, nor fee-shifting, is appropriate.[46]

## B.  Is the Declaration Enforceable Against Plaintiffs?

First, I consider whether the deed restrictions in the Declaration can be enforced against Plaintiffs.  Under Delaware law, a servitude may be established "'by explicit written language of the intent of the grantor and the grantee to create a restrictive covenant in the deed ... or another recorded document.'"[47]  To establish

---

[42] D.I. 24; D.I. 1, at 9.

[43] D.I. 27, at 12-17.

[44] D.I. 29, at 30-40.

[45] *Id.*, at 43.

[46] *Id.*, at 44-46.

[47] *New Castle County v. Pike Creek Recreational Servs., LLC*, 82 A.3d 731, 757 (Del. Ch. 2013) (citing *Leon N. Weiner & Assocs., Inc. v. Krapf*, 623 A.2d 1085, 1088 (Del. 1993)) (ellipses in original), *aff'd,* 105 A.3d 990 (Del. 2014); *see also Capano v. Draper Subdivision Ass'n, Inc.*, 2019 WL 3938704, at *11 (Del. Ch. Aug. 20, 2019).

an explicit servitude, "a plaintiff must show the restriction touches and concerns the land, the original covenanting parties intended to establish the restriction, and that the purchasing party was on actual or constructive notice of the restriction."[48] It is undisputed that the Declaration touches and concerns the land because it would impose a burden (limit homeowners' ability to change their properties) and create a benefit (allowing for common development) on the land.[49]

Next, I consider whether the original covenanting parties intended to establish the deed restrictions in the Declaration. "[R]estrictive covenants are recognized and enforced where the parties' intent is clear and the restrictions are reasonable."[50] The Declaration states repeatedly that the property within the Plan is intended to be subject to the deed restrictions contained in the Declaration.[51] If Plaintiffs had actual or constructive notice of the Declaration when they purchased their properties, then the evidence shows that they intended for the deed restrictions in the Declaration to bind their properties.

---

[48] *New Castle County*, 82 A.3d at 757 (citing *Van Amberg v. Bd. of Governors of Sea Strand Ass'n*, 1988 WL 36127, at *6 (Del. Ch. Apr. 13, 1988)).

[49] *See Van Amberg*, 1988 WL 36127, at *7 n. 16 (cleaned up).

[50] *New Castle County*, 82 A.3d at 745. Since Plaintiffs make no allegations about specific deed restrictions, I make no ruling on the reasonableness of specific deed restrictions in the Declaration.

[51] *See* D.I. 31, Ex. A; *id.*, Ex. B.

10

Restrictive covenants "may be enforced against a purchaser only if he or she had notice, either actual or constructive, of their existence."[52] "Actual notice is an awareness of the alleged restriction by the purchaser at the time of purchase."[53] "[B]uyers with knowledge or the means of gaining knowledge of covenants restricting use of the land they propose to purchase cannot effectively object to the enforcement of such covenants if they are reasonable, realistic, and are fairly administered."[54] "Constructive notice is normally established by properly recording the instrument that contains the alleged restriction."[55] "[C]onstructive notice suggests there is a properly recorded deed or other instrument that includes details of the restriction and which is readily available via a routine title search."[56] Under established Delaware law, a purchaser in a development is "required to take notice of all recorded deeds [and instruments] from [the developer] conveying portions of

---

[52] *New Castle County*, 82 A.3d at 746 (quoting *Mendenhall Vill. Single Homes Ass'n v. Harrington,* 1993 WL 257377, at *2 (Del. Ch. June 16, 1993)) (internal quotation marks omitted).

[53] *The Greylag 4 Maintenance Corp. v. Lynch-James*, 2004 WL 2694905, at *5 (Del. Ch. Oct. 6, 2004) (citation omitted).

[54] *New Castle County*, 82 A.3d at 746 (quoting *Alliegro v. Home Owners of Edgewood Hills, Inc.*, 122 A.2d 910, 912 (Del. Ch. 1956)) (internal quotation marks omitted).

[55] *Greylag 4 Maintenance Corp.*, 2004 WL 2694905, at *5 (internal quotation marks and citation omitted); *see also Van Amberg v. Board of Governors of Sea Strand Ass'n*, 1988 WL 36127, at *7 (Del. Ch. Apr. 13, 1988) ("A purchaser is bound with constructive notice of all recorded instruments and the recitals therein lying within his chain of title.").

[56] *New Castle County*, 82 A.3d at 746 n. 112 (citation omitted).

11

th[e development]."[57]  "Notice of a deed is notice of whatever matters one would have learned by any inquiry which the recitals of the instrument made it one's duty to pursue."[58]

"[A]s a general rule, the party advocating for the land use restriction bears the burden of demonstrating the restriction is valid and enforceable."[59]  However, in this matter, Plaintiffs have asked the Court to declare that their properties are not subject to the Declaration and to enjoin enforcement of the deed restrictions.[60]  And, Plaintiffs have pled that they intend to prove (1) that "there were no valid deed restrictions of record" when they purchased their properties,[61] and (2) that they lacked "actual knowledge of the contents of the Declaration."[62]  "While there is a split of authority as to who should bear the burden of persuasion,"[63] "in determining the allocation of the burden of proof in suits for declaratory judgment, 'the better

---

[57] *Cashvan v. Darling*, 107 A.2d 896, 901 (Del. Ch. 1954); *see also Van Amberg*, 1988 WL 36127, at *7.

[58] *Cashvan*, 107 A.2d at 901 (cleaned up).

[59] *New Castle County*, 82 A.3d at 746; *see also Leon N. Weiner & Assocs., Inc. v. Krapf*, 623 A.2d 1085, 1088 (Del. 1993) ("[T]he burden of establishing the existence of and the right to benefit from a restrictive covenant is placed upon the person who asserts its protection.").

[60] D.I. 1, at 9-10.

[61] *Id.*, ¶ 9.

[62] *Id.*, ¶ 20

[63] *Certain Underwriters at Lloyd's London v. Nat'l Installment Ins. Servs., Inc.*, 2007 WL 4554453, at *6 (Del. Ch. Dec. 21, 2007), *aff'd*, 962 A.2d 916 (Del. 2008) (TABLE).

view is that a plaintiff in a declaratory judgment action should always have the burden of going forward.'"[64] Thus, in this posture, Plaintiffs bear the burden of showing that their properties are not subject to the Declaration, and also in proving their entitlement to injunctive relief.[65]

1. Did the Mays, Rollins, and Barnetts Have Constructive Notice of the Declaration?

The POA contends that the Mays, Rollins, and Barnetts had, at least, constructive notice of the Declaration when they purchased their properties.[66] Plaintiffs respond that the Declaration was not properly recorded and was insufficient to put a purchaser on constructive notice.[67] They claim the Declaration failed to identify the real property to which it was to attach, either by land description or tax parcel number, and the Developer acknowledged its flaws by re-recording the Declaration, with the omitted Exhibit A, in 2015.[68] Plaintiffs further argue that the Declaration was not referenced in Plaintiffs' deeds, so it is not in their chains of title, and its entry in the grantor-grantee index in the Recorder of Deeds ("ROD") does

---

[64] *Hexion Specialty Chems., Inc. v. Huntsman Corp.*, 965 A.2d 715, 739 (Del. Ch. 2008) (citations omitted).

[65] *See Civic Ass'n of Surrey Park v. Riegel*, 2022 WL 1597452, at *8 (Del. Ch. May 19, 2022).

[66] D.I. 29, at 37-40.

[67] D.I. 27, at 14-16.

[68] *Id.*

not create record notice.[69] The POA disputes Plaintiffs' claims, arguing that the Declaration was in the Mays', Rollins', and Barnetts' chains of title, properly recorded at the time they purchased their properties, and a searchable document that was reasonably found.[70]

In determining whether the Mays, Rollins, and Barnetts had constructive notice of the Declaration when they purchased their properties, I consider whether the Declaration would have appeared in a reasonably diligent search of their chains of title at the time they purchased their properties. The POA shows that it would have – title searchers found the Declaration in their search related to the title insurance policies for Rollins issued on May 7, 2014 and for Barnetts on July 14, 2014.[71] Therefore, the Declaration was a searchable document that was reasonably found. And, although the title insurance documents related to the May Deed were not provided as evidence, I find it is reasonable to conclude that the Declaration would have also been revealed at the time that the May Deed was executed, since it was recorded prior to that time and was found in the later searches for the Rollins

---

[69] D.I. 41, at 19-21; D.I. 46, at 9-13.

[70] D.I. 29, at 37-40; D.I. 31, Ex. D; D.I. 40, at 33-37.

[71] D.I. 30, Exs. J-1, J-3. Plaintiffs argue that because the title insurance documents nominally post-date the relevant parties' deeds, they cannot be relied upon by the Court to establish constructive notice. D.I. 41, at 21-22. I disagree. The information contained within the title insurance documents revealed what a contemporaneous, reasonable title search would have provided. D.I. 30, Exs. J-1, J-3; D.I. 29, at 9-10.

14

Deed and the Barnett Deed. Therefore, because the Declaration was discoverable in a routine title search, the Declaration binds the properties of the Mays, Rollins, and Barnetts, because they had record notice at the time they purchased their properties.[72]

Plaintiffs argue that the Declaration is outside their chain of title for a variety of reasons, including that the Declaration's inclusion in the grantor/grantee index is not part of the chain of title, which is limited to linking deeds to prior deeds.[73] The POA responds that if deed restrictions can be found through a title search "tracing back owners of the subject property, link by link, grantors to grantees," then the restrictions are properly recorded and establish constructive notice.[74]

"[ROD] records give notice of what [a] reasonably diligent search would discover."[75] The search looks for a properly recorded deed or other instrument in [ROD] records that "is readily accessible via a routine title search."[76] "That is one of the purposes for a search of the Grantor Indices in a title search and it is not unreasonable ... to impose on [a purchaser] the duty to have examined the conveyance from [a grantor to another purchaser] to see if it affected his title."[77]

---

[72] *See Cashvan v. Darling*, 107 A.2d 896, 901 (Del. Ch. 1954).

[73] D.I. 41, at 9.

[74] D.I. 29, at 38-39.

[75] *Burke v. C. William Huber Co., Inc.*, 1981 WL 377667, at *2 (Del. Super. July 23, 1981).

[76] *New Castle County v. Pike Creek Recreational Servs., LLC*, 82 A.3d 731, 746 n. 112 (Del. Ch. 2013), *aff'd,* 105 A.3d 990 (Del. 2014).

[77] *Pusey v. Clayton*, 1986 WL 2636, at *2 (Del. Ch. Feb. 20, 1986).

15

Here, it is undisputed that the Declaration can be found in the ROD's grantor-grantee index.[78] Plaintiffs argue that the possibility of discovering a prior conveyance through the grantor-grantee index is insufficient to constitute notice within a chain of title unless that prior conveyance is noted in a deed's "beings clause."[79] None of the deeds at issue refer to the Declaration specifically, although the May Deed and the Barnett Deed state that the property is subject to "all restrictions … of record in the Office of the Recorder of Deeds in and for Sussex County, Delaware."[80] The Rollins Deed does not include that language.[81] I find, Plaintiffs' position unpersuasive. This Court has held that an easement discoverable through a search of the grantor-grantee index was binding on a subsequent purchaser, even though that easement was not referenced in the subsequent purchaser's deed.[82] The language in the May Deed and the Barnett Deed put them on notice that they needed to check for previously recorded restrictions.[83] Although the Rollins Deed does not reference previous restrictions, the Declaration was

---

[78] D.I. 31, Ex. D; D.I. 41, at 19-20 (Plaintiffs' acknowledgement that the Declaration is in the grantor-grantee index); *id*., at 21-22.

[79] D.I. 41, 19-21.

[80] D.I. 1, Ex. B; *id*., Ex D.

[81] D.I. 11, Ex. D.

[82] *See Pusey*, 1986 WL 2636, at *2; *see also Mendenhall Village Single Homes Association v. Harrington*, 1993 WL 257377, at *3 (Del. Ch. June 16, 1993).

[83] D.I. 1, Ex. B; *id*., Ex D.

16

revealed during the title search that was performed prior to the execution of their deed.[84]

Plaintiffs also argue that the Declaration was not properly recorded, citing to the dictionary definition of "properly" as "in an accurate or correct way."[85] They contend that the re-recording of the Declaration in 2015 shows that the Declaration was not properly recorded in 2013.[86] And, they rely upon the affidavit of John F. Brady, Esq., former Sussex County Recorder of Deeds, to support the proposition that if "deed restrictions [are] recorded without a mete[s] and bound description or with an incorrect tax identification number, that document is not properly

---

[84] In their reply brief, Plaintiffs cite *Heron Bay Property Owners Ass'n, Inc. v. CooterSunrise, LLC* ("*Heron Bay*"), 2013 WL 3871432, at *9 (Del. Ch. June 27, 2013), for the proposition that deed restrictions must be referenced in a deed for a party to have constructive notice of those restrictions. D.I. 46, at 9. In *Heron Bay*, the deed restrictions at issue were properly recorded and referenced in the party's deed. *Id.* However, the case cited in *Heron Bay* for that proposition – *Mendenhall Village Single Homes Ass'n v. Harrington*, 1993 WL 257377, at *2 (Del. Ch. June 16, 1993) – found that this was a "general rule," but that restrictions found within a chain of title but not mentioned in the defendants' deed can be binding upon a subsequent purchaser through constructive notice. *Id.*, at *3. In addition, the evidence shows that the Rollins signed the Seller's Disclosure of Real Property Condition Report on their property, in which the box had been checked "yes" in answer to the question "Is the property subject to any deed restrictions?" D.I. 29, at 20; D.I. 30, Ex. I-1. They also signed a PUD rider agreeing to perform all borrower's obligations under the Declaration. D.I. 29, at 20; D.I. 30, Ex. J.

[85] *See* D.I. 27, at 15.

[86] *Id.* Plaintiffs avers that the ROD had revoked the Declaration recorded in 2013. D.I. 1, ¶ 12; *see also* D.I. 11, at 3. I find no bases in fact or law for this contention. I take judicial notice of the fact that the Declaration recorded in 2013 is still accessible in ROD records. *See* Sussex County Recorder of Deeds, https://deeds.sussexcountyde.gov/LandmarkWeb. And, I find no support for the proposition that the ROD may unilaterally revoke a recorded instrument.

17

recorded."[87]  I decline to adopt this proposition, and refer to statutes related to the recording of deeds, which focus on the timeliness of the recording.[88]  Additionally, other references to being "properly recorded" focus on being recorded and indexed with the ROD so that the deed or instrument may be given effect under Delaware's pure race recording statute.[89]  Based on these considerations, the Declaration was properly recorded in 2013 and bound subsequent conveyances of property subject to the Declaration through constructive notice.

Plaintiffs finally argue that the Declaration recorded in 2013 was insufficient to bind their properties because it failed to identify the subject property, provided an incorrect tax map parcel number, and omitted Exhibit A, the description of the affected property.[90]  However, the Declaration defines "Property" as "set forth in Exhibit 'A' attached hereto and made a part hereof *and further shown on a Final Site Plan for Bay Landing recorded in the Office of the Recorder of Deeds in and*

---

[87] D.I. 25, Ex. F, ¶ 8.

[88] 25 *Del. C.* §§ 153-154, 156.  Notably, 25 *Del. C.* § 156 states, "Any and all deeds and letters of attorney which have been recorded on the day of the sealing and delivery thereof shall be deemed to have been properly recorded."  If this is the appropriate test for being "properly recorded," then the Declaration meets that test.  The Declaration was executed and acknowledged on October 30, 2013; it was recorded that same day. *See* D.I. 13, Ex. A.

[89] *See* 25 *Del. C.* § 153; *see also Hitchens v. Ellingsworth*, 94 A. 903, 904 (Del. Super. 1915) ("The recording of a deed is not essential to its validity as between the parties and is important chiefly to maintain its priority and force against subsequent conveyances and incumbrances.").

[90] D.I. 27, at 15.

*for Sussex County at Plot Book 145, Page 19.*"[91]  And, Article III of the Declaration describes the property subject to the Declaration as "all that property located in Broadkill Hundred, Sussex County, Delaware *as shown on the Record Plot*, and as described in Exhibit 'A'."[92]  "Record Plot" is defined as "the plot of record in [the ROD] recorded in Plot Book 145, at Page 19 …"[93]  Despite the failure to attach Exhibit A in 2013, the Declaration clearly references the Plan to show what property is subject to the Declaration and the Plan identifies Plaintiffs' properties as part of the Community.[94]  Therefore, the Declaration recorded in 2013 sufficiently identifies the Plaintiffs' properties as subject to the deed restrictions in the Declaration.  With regard to Plaintiffs' allegation that the Declaration contained an incorrect tax map parcel number, the POA explains that the tax map parcel number in the Declaration was identical to the number in the Plan that covered all lots within the Community

---

[91] D.I. 13, Ex. A (emphasis added).

[92] *Id.*, Ex. A, art. III (emphasis added).

[93] *Id.*, Ex. A, art. I.

[94] *See* D.I. 1, ¶ 20; *compare* D.I. 13, Ex. C (the Plan) *with* D.I. 1, Ex. A. (Hague Deed identifying the property as "Lot 30, Bay Landing, as shown on the [Plan]") *and* D.I. 1, Ex. B (May Deed identifying the property as "Lot 31 Bay Landing, as shown on the [Plan]") *and* D.I. 11, Ex. D (Rollins Deed identifying the property as "Lot 36 Bay Landing, as shown on the [Plan]") *and* D.I. 1, Ex. D (Barnett Deed identifying the property as "Lot 28 Bay Landing, as shown on the [Plan]").

(this is corroborated by the reference to "lots 1-41" next to the tax map parcel number in the Declaration).[95]

Accordingly, I find the evidence shows that the Declaration is binding on the Mays', Rollins', and Barnetts' properties, and recommend that the Court grant summary judgment in the POA's favor and dismiss Counts I and II of the Complaint, seeking declaratory and injunctive relief, related to the Mays, Rollins, and Barnetts.

2. Is the Declaration Enforceable Against the Hagues?

The Hagues present a different factual situation than that of the Mays, Rollins, or Barnetts. They took their property through the Hague Deed before the Declaration was executed or recorded in 2013.[96] Restrictive covenants may be binding against a purchaser only if they have actual or constructive notice.[97] The issues are (1) whether the original covenanting parties intended that the Declaration bind the

---

[95] D.I. 40, at 29. Plaintiffs correctly point out that the Declaration does not identify their properties by individual tax parcel number. *See* D.I. 41, at 7. Similarly, the Plan does not contain the tax map parcel number for Plaintiffs' properties. *See* D.I. 31, Ex. C. Plaintiffs contend that the absence of Plaintiffs' tax map parcel numbers is fatal to the Declaration's effect. *See* D.I. 27, at 15; *id.*, Ex. F. However, a tax map parcel identification number is but one way to identify property in a recorded instrument. *See Wells Fargo Bank, N.A. v. Richardson*, 2013 WL 4257967, at *5 (Del. Ch. Aug. 13, 2013); *Point Mgmt., LLC v. MacLaren, LLC*, 2012 WL 2522074, at *16 (Del. Ch. June 29, 2012); *In re Skrzec*, 2010 WL 2696257, at *5 (Del. Ch. June 30, 2010). The Declaration references the Plan, which identifies Plaintiffs' properties, and Plaintiffs were on constructive notice of the Declaration.

[96] *Compare* D.I. 1, Ex. A (dated and acknowledged on February 8, 2013) *with* D.I. 31, Ex. A (dated and acknowledged on October 30, 2013; recorded on October 30, 2013).

[97] *See supra* notes 52-58 and accompanying text.

Hagues' property and (2) whether the Hagues had actual or constructive notice of the Declaration.

Plaintiffs assert that because the Hague Deed pre-dates the recording of the Declaration in 2013, the Hagues had no actual or constructive notice of the Declaration, and it does not bind their property.[98] Plaintiffs contend that a planned unit development rider ("PUD rider") to the Hagues' mortgage is insufficient to constitute notice.[99] The POA alleges that the Hagues are estopped from arguing the Declaration does not apply to them because they "acquiesced with acknowledgment of the Declaration when they signed multiple PUD Riders, which required them to acknowledge and comply with the 1/1/2012 Declaration they had received prior to the purchase of their property, and later, with the 2015 Declaration, at their 2018 and 2021 refinances," and accepted a benefit from the acknowledgement.[100] Further, the POA argues that the Hagues acknowledged that, before signing a contract, they "were advised that the developer would be developing building restrictions for the community."[101]

---

[98] D.I. 27, at 16-18.

[99] D.I. 41, at 16-18; D.I. 46, at 13-16. The PUD rider was signed by the Hagues and states that the Hagues' property is part of a planned unit development known as Bay Landing" and that they agree to perform all of borrower's obligations under the "PUD's Constituent Documents," which include the "Declaration." D.I. 30, Ex. I.

[100] D.I. 29, at 35; D.I. 40, at 15-17.

[101] D.I. 47, at 3 (quoting D.I. 41, Ex. A, ¶ 5). In addition, the POA points to a February 19, 2018 email from Jessica Hague quoting an unexecuted version of the Declaration dated

I find that there are material factual issues that preclude summary judgment with respect to whether the Declaration is binding on the Hagues' property.[102] The main issue is whether the Hagues actually knew about the deed restrictions in the Declaration at the time they purchased their property. The Hagues both maintain that they never received a written copy or explanation of the restrictions prior to their purchase of their property.[103] However, Stephen Hague avers that, in 2012, he was aware that the Developer would develop deed restrictions.[104] Plaintiffs knew they "were buying real property in a subdivision and believed that they would eventually be members of a homeowners' association."[105] The Hagues, in a PUD rider to their mortgage agreement executed at the time of purchase, covenanted that they would

January 1, 2012, which contained "essentially the same deed restrictions as in the 2013 Declaration," to show that the Hagues had affirmed and acknowledged the Declaration's deed restrictions. D.I. 40, at 15; D.I. 31, Ex. E.

[102] There are questions regarding the Declaration, including the effect of the unsigned version of the Declaration dated January 1, 2012, and the discrepancies between when the Declaration states that it was executed (January 1, 2013) and when it was signed and acknowledged (October 30, 2013). *See* D.I. 30, Ex. F; D.I. 41, Ex. D; D.I. 31, Ex. A. When the Declaration became effective may impact the identity of the original covenanting parties.

[103] D.I. 41, Ex. A, ¶ 5; *id.*, Ex. B, ¶ 3. The POA asserts that the Hagues knew of the deed restrictions when they made the purchase contingent upon the Developer approving a larger size shed, because "[t]he only plausible reason for this was that the Hagues were aware of size restrictions for sheds." D.I. 29, at 11. Plaintiffs respond, in part, that the Declaration does not contain a prohibition of shed size. D.I. 41, at 10. This remains a disputed factual issue.

[104] D.I. 41, Ex. A, ¶ 5.

[105] D.I. 27, at 9.

22

"perform all ... obligations" under the Community's governing documents.[106] Further, Plaintiffs presented evidence suggesting that all homebuyers "from 2012 through the Fall of 2014, were given the 2012 version of the [Declaration],"[107] and the Hagues were later in possession of the 2012 version of the Declaration.[108] Thus, I conclude that there is a material factual dispute as to whether the Hagues had "knowledge or the means of gaining knowledge of" the Declaration so that they had actual notice.[109]

Finally, a question remains whether a reasonable inquiry based on the search of ROD records would have revealed the Declaration. The Declaration was not recorded at the time the Hagues took the Hague Deed,[110] but the Hague Deed references the Plan,[111] and the Hagues took their property knowing that "a homeowners' association was to be created at some future date and they would be members" of that homeowners' association.[112] And, the Plan references a

---

[106] D.I. 30, Ex. H.

[107] D.I. 41, Ex. D.

[108] D.I. 31, Ex. E. Jessica Hague avers that she came into possession of the 2012 version of the Declaration in 2017 or 2018. D.I. 41, Ex. B, ¶¶ 2-4. *But see id.*, Ex. D (stating that "Homebuyers from 2012 through the Fall of 2014, were given the 2012 version of the [Declaration]").

[109] *See supra* note 54 and accompanying text.

[110] *Compare* D.I. 1, Ex. A (Hague Deed executed on February 8, 2013) *with* D.I. 31, Ex. A (Declaration recorded on October 30, 2013).

[111] D.I. 1, Ex. A.

[112] *See supra* note 13.

homeowners' association.[113] "Notice of a deed is notice of whatever matters one would have learned by any inquiry which the recitals of the instrument made it one's duty to pursue."[114] What is unclear, at this stage, is whether the recitals and references in the Plan could be found to have reasonably compelled the Hagues to pursue an inquiry about the anticipated homeowners' association such that it would have led to the discovery of the Declaration.

Because I find material factual disputes, I recommend that the Court deny the POA's motion for summary judgment and Plaintiffs' partial motion for summary judgment as it relates to whether the Declaration binds the Hagues' property.

*C. Should Summary Judgment be Denied with Respect to the Corporate Law Claims?*

As alternative causes of action, Plaintiffs allege that the Board's actions were void because the Community's bylaws require a four member Board and the Board has been acting with only three members ("Corporate Law Claims"), and seek the appointment of a receiver pendente lite, custodian or a special master to oversee the POA corporation.[115] The original motion for judgment on the pleadings did not seek judgment on the Corporate Law Claims.[116] The POA moved for summary judgment

---

[113] D.I. 13, Ex. C.

[114] *Cashvan v. Darling*, 107 A.2d 896, 901 (Del. Ch. 1954) (cleaned up).

[115] D.I. 1, ¶¶ 31-41.

[116] *See* D.I. 11.

on all claims.[117]  On summary judgment, the POA argues that the Corporate Law Claims should be dismissed as derivative because Plaintiffs failed to make a demand on the board and that Plaintiffs otherwise have made no showing that would entitle them to the equitable relief sought on the Corporate Law Claims.[118]  Plaintiffs argue that the Court held the Corporate Law Claims in abeyance following the September 7, 2021 status conference.[119]

There is a sparse record before me concerning the Corporate Law Claims.[120] Because of this sparse record, I find that it is desirable to inquire more thoroughly into the facts to clarify the application of law to the circumstances.[121]

I address, however, the POA's argument that the Corporate Law Claims should be dismissed because they are derivative.[122]  Plaintiffs respond that it is settled law in Delaware that a stockholder or member of a corporation has a direct claim against the corporation for violating the bylaws or other governing document

---

[117] *See* D.I. 22.

[118] D.I. 29, at 43-45.

[119] D.I. 41, at 24-25.

[120] *See* D.I. 29, at 43-45; D.I. 41, at 24-25.

[121] *See supra* note 38 and accompanying text; *see also McCabe v. Wilson*, 1986 WL 8008, at *2 (Del. Super. June 26, 1986) (noting that "summary judgment, with ever-lurking issues of fact, is a treacherous shortcut").

[122] D.I. 29, at 43-44.

because those documents create a contract between the stockholders or members and the corporation.[123]

"A derivative suit enables a stockholder to bring a suit on behalf of the corporation for harm done to the corporation."[124] "However, a stockholder who is directly injured retains the right to bring an individual action for injuries affecting his or her legal rights as a stockholder."[125] "Plaintiffs' classification of the suit is not binding,"[126] and "the Court looks at the nature of the wrong alleged, not merely at the form of words used in the complaint."[127] The determination of whether a stockholder's claim is direct or derivative "turn[s] solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?"[128] It is well established that "[s]tockholders [or members] can sue directly to enforce contractual constraints on

---

[123] D.I. 41, at 24-25.

[124] *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1262 (Del. 2021) (citation omitted).

[125] *Id.*, at 1263 (citation omitted).

[126] *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004) (internal quotation marks and citation omitted).

[127] *Blue v. Fireman*, 2022 WL 593899, at *5 (Del. Ch. Feb. 28, 2022) (internal quotation marks and citations omitted).

[128] *Tooley*, 845 A.2d at 1033 (emphasis omitted); *accord Brookfield Asset Mgmt.*, 261 A.3d at 1263.

a board's authority under the charter, bylaws, and provisions of the DGCL."[129] Because Plaintiffs appear to be suing to enforce contractual constraints on the Board's authority under the POA's governing documents,[130] this would be a direct claim against the POA corporation that is not subject to dismissal for failure to make a demand.

Similarly, the Plaintiffs' claim for appointment of a custodian or special master until the Board is properly constituted should not be dismissed at this juncture, since it may be determined to be an appropriate remedy if their direct claims are successful.[131] Therefore, and I recommend that the Court deny the POA's motion for summary judgment related to Counts III and IV of the Complaint.[132]

## IV. Conclusion

Based upon the reasons set forth above, I recommend that the Court grant the POA's Motion for Summary Judgment with respect to Plaintiffs Donald May, Kara

---

[129] *In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025, 1050 (Del. Ch. 2015) (citations omitted); *see also id.* at 1049 ("Direct claims also include causes of action to enforce contract rights that stockholders possess under the corporation's certificate of incorporation and bylaws[.]") (citations omitted).

[130] The Complaint identifies the governing document as the "Bylaws." D.I. 1, ¶ 32. No party has introduced a document entitled "Bylaws" into the record.

[131] *See, e.g., Beck v. Greim*, C.A. No. 10223-MG (Del. Ch. Apr. 11, 2019) (ORDER) (Montgomery-Reeves, V.C.) (appointing a special master to oversee a new election of a homeowners' association).

[132] Additionally, both parties seek attorneys' fees. *See* D.I. 1, ¶¶ 42-43; D.I. 9, at 18. Because this case is not resolved on summary judgment, it would be premature to address attorneys' fees.

May, Jordon Rollins, Julie Rollins, John Barnett, and Nancy Barnett on Counts I and II. I recommend that the Court deny the POA's Motion for Summary Judgment with respect to Stephen Hague and Jessica Hague on Counts I and II. I further recommend that the Court deny the POA's Motion for Summary Judgment on Counts III, IV, and V. Finally, I recommend that the Court deny Plaintiffs' Motion for Partial Summary Judgment. This is a final master's report, and exceptions may be taken under Court of Chancery Rule 144.